## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     *Plaintiff,*

     v.                                    **Civ. No. 21-444**

$194,850.00 UNITED STATES CURRENCY,

     *Defendant-in-rem.*

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil action to forfeit and condemn to the use and benefit of the United States of America property involved in violations of the Controlled Substances Act and 18 U.S.C. § 1952 that is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

### DEFENDANT *IN REM*

2.     The defendant *in rem* consists of the following:

     a.  $194,850.00 United States Currency,
(hereafter collectively referred to as "Defendant Currency").

3.     The Defendant Currency was seized by the Drug Enforcement Administration (DEA) on January 24, 2021, in the District of New Mexico.

4.     The Defendant Currency is now, and during the pendency of this action will be, in the jurisdiction of this Court.

## JURISDICTION AND VENUE

5.      The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6.      Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district. Upon the filing of this complaint, the Defendant Currency will be arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

## FACTS

7.      On January 23, 2021, Drug Enforcement Administration (DEA) Special Agent Jarrell Perry received information from the Amtrak Police Department concerning a male, later identified as Hazma Cherradi, who had been searched by the Interdiction Detail in Chicago, Illinois prior to Cherradi departing on a westbound Amtrak Train for Los Angeles, California. Agent Perry was informed that Cherradi had clear plastic, vacuum sealed bundles of money wrapped in various rubber-bands concealed inside of a small cardboard box. Agent Perry was informed that Cherradi stated that he had $90,000.00 in U.S. Currency and had been allowed to continue his travel on the Amtrak Train.

8.      Agent Perry reviewed an Amtrak train Passenger Name Record (PNR) in the name of Hazma Cherradi, reflecting one-way travel from Philadelphia, Pennsylvania to Los Angeles, California that was paid on Apple Pay in the amount $1,490.00, for travel in sleeper car 430, deluxe bedroom E. The PNR reflected that the ticket was purchased via the Internet on January 20, 2021 at 9:16 p.m., two days prior to the departure of the Amtrak Train from Philadelphia, Pennsylvania.

9.      On January 24, 2021, Agent Perry, Task Force Officer (TFO) Savedra, TFO F. Chavez and Detective Sinclair were at the Amtrak Train Station in Albuquerque, New Mexico to speak with Cherradi. Agent Perry observed a male, later identified as Hamza Cherradi, walk away

2

from sleeper car number 430 and onto the upper platform. A few minutes later Agent Perry approached Cherradi. Agent Perry said, "Hello sir, how are you doing?" Cherradi said, "How are you doing sir?" Agent Perry displayed his DEA badge and identified himself as a DEA agent, to Cherradi. Agent Perry asked Cherradi for permission to speak with him, and Cherradi said, "Yeah, absolutely."

10.     Agent Perry asked Cherradi if he had his ticket with him and Cherradi said, "Yes." Agent Perry asked Cherradi where he was traveling to and Cherradi said, "I'm going to LA." Agent Perry asked Cherradi where he started his trip, and Cherradi said, "Philadelphia, Chicago, then LA."

11.     Agent Perry asked Cherradi if he lived in Philadelphia or LA. Cherradi said, "I live in Philly and LA." Cherradi said that he was going to become a resident of California when he arrived there on this trip, and that he had been traveling back and forth for the past year. Cherradi said that his fiancé lives in LA, and that it was good for his business, which is a music production company.

12.     Cherradi showed Agent Perry an Amtrak Train ticket in the name of Hazma Cherradi which was located on his cellular telephone. Agent Perry reviewed the ticket and immediately returned it to Cherradi.

13.     Agent Perry asked Cherradi if he had identification with him and Cherradi said, "Upstairs, I'll get it for you." Agent Perry asked Cherradi for permission to see his identification and Cherradi boarded coach car 430, walked upstairs to bedroom E and entered bedroom E. Cherradi retrieved identification and handed it to Agent Perry. Agent Perry reviewed the identification and immediately returned it to Cherradi.

14.     Cherradi said that he was checked in Chicago and had been searched.

15.     Agent Perry asked Cherradi if he had any weapons or anything illegal. Cherradi said, "Oh you can search if you would like." Agent Perry asked Cherradi if he had luggage with him and Cherradi identified a large black suitcase lying in the floor of the bedroom and a fanny pack. Agent Perry asked for and received permission from Cherradi to enter his bedroom.

16.     Agent Perry sat Cherradi's suitcase on the lower bunk and conducted a search. Cherradi stepped into the hallway and spoke with Detective Sinclair.

17.     Agent Perry located a cardboard box for a keyboard and opened the box, which revealed two large clear plastic, heat-sealed bundles containing various large rubber-band wrapped bundles of money. A photo of the Defendant currency as it was encountered by Agent Perry is included here for reference:



18.     Agent Perry knew from his experience that the packaging and rubber-bands were consistent with other bundles of money that he had observed in past encounters which were involved in the illegal narcotics business.

19.     Cherradi informed Detective Sinclair that he was traveling with cash because it was easier to do it that way. Cherradi said that when you travel by plane it's too much headache, and that he had the same problem with officers in Chicago. Agent Perry observed that Cherradi's breathing was labored when speaking.

20.     Agent Perry asked Cherradi if the money was the cash that he was speaking about and Cherradi said yes. Cherradi said that it was a hundred and some thousand and that he was the one who had packaged the cash.

21.     Cherradi said he wrapped the money to make it neat and so that it would not go all over the place. Cherradi became more nervous and his breathing became more labored when speaking. Cherradi said that the bundles were in $10,000.00 increments and the smaller ones were in $2,500.00 increments.

22.     Cherradi initially said that he had cash just because, and did not provide a definite answer for why he was transporting the currency. Cherradi said that he had money in the bank and from other businesses. Cherradi said that he taken between $25,000.00 to $50,000.00 out of the bank (but the total amount of the currency was later determined to be much larger). Cherradi stated that he had counted the money himself before leaving, but during the encounter with Agent Perry, Cherradi stated that the cash totaled a little over $100,000.00, then later said it totaled between $160,000.00 and $180,000.00. (The actual total was $194,850.00.)

23.     Cherradi said that he does a lot of cash business and showed Agent Perry a web site of his business on his phone as well as a screen shot of his bank account. Cherradi said that he was

going to a hemp and CBD Oil farm in California to purchase more products for the business. One of the photos of the website that Cherradi showed Agent Perry is included here for reference:



24.     The name on the website and the name on the bank account shown to Agent Perry did not appear to be for the same business. Specifically, the name on the bank account referenced a music production company.

25.     Agent Perry informed Cherradi that the money that he had with him was being seized because Agent Perry believed that the money was either proceeds of illegal narcotics or was being used to facilitate the purchase of illegal narcotics.

26.     Agent Perry obtained various photographs of the bundles of money inside of the cardboard box. Agent Perry filled out a receipt for the unknown amount of United States Currency that was being seized. Agent Perry explained the process for Cherradi to file a claim for the money that was being seized from him.

27.     Agent Perry and TFO F. Chavez placed the currency into a self-sealed envelope in the presence of Cherradi.

28.     Cherradi, Agent Perry and TFO F. Chavez signed the top portion of the self-sealed envelope prior to sealing it.

29.     Cherradi wanted to obtain various photographs of the money and the money inside of the self-sealed envelope. Agent Perry gave Cherradi a copy of the receipt for seizure of the currency.

30.     Agent Perry, TFO F. Chavez, TFO Savedra and Detective Montoya transported the currency to the DEA Albuquerque Office.

31.     At the DEA Albuquerque Office, Albuquerque Police Department Detective Sinclair deployed his trained and certified drug odor detection canine on the undetermined amount of U.S. Currency. Detective Sinclair informed Agent Perry that his trained and certified drug detection canine alerted positive to the undetermined amount of U.S. Currency for the odor of illegal controlled substance.

32.     DEA investigation revealed Hamza Cherradi has a previous arrest for a controlled substance violation in Pennsylvania.

33.     On January 25, 2021, the undetermined amount of U.S. was transported to Loomis Armored Transport for an official count. The currency totaled $194,850.00.


## FIRST CLAIM FOR RELIEF

34.     The United States incorporates by reference the allegations in paragraphs 1 through    as though fully set forth.

35.     Title 21, United States Code, Section 881(a)(6) subjects to forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be

furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

36.     Defendant Currency was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act and is thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

37.     The United States incorporates by reference the allegations in paragraphs 1 through as though fully set forth.

22.     18 U.S.C. § 1952 prohibits interstate and foreign travel or transportation with the intent to (1) distribute the proceeds of any unlawful activity; (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity.  Unlawful activity is defined in 18 U.S.C. § 1952(b).

23.     Defendant Currency is the proceeds of a violation of 18 U.S.C. § 1952 or is the proceeds traceable to such property and, is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE: Plaintiff seeks arrest of Defendant Currency and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Currency, costs, and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

BRANDON L. FYFFE
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the Drug Enforcement Administration who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: __05-10-2021__

_____
Jarrell W. Perry, Special Agent
Drug Enforcement Administration

10